IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE ) | MAG NO. : |
| SEARCH OF: ) | UNDER SEAL |
| ) | |
| Premises known as Extra Space Storage Unit ) | |
| Number 2027 Located at 6011 Blair Road, N.W. ) | |
| Washington, D.C. ) | |

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

1. Your Affiant has been a sworn member of the Metropolitan Police Department for over 18 years and is currently a Detective assigned to the Narcotics and Special Investigations Division (Drug Interdiction Unit). In addition to my training as a police officer, I have also received specialized training: I have attended the MPD "Buy/Bust" course and the MPD "Use of Informants" course. I have attended a 16 hour course in "Firearm Trafficking" and "Crime Gun Tracing", as well as a 16 hour course in "Gun Recognition" and "Execution of High Risk Warrants". I have participated in over fifty search warrants in which arrests were made, and firearms, money, and large quantities of narcotics were seized. Your Affiant has also attended a 24 hour course of instruction on Conspiracy Investigations and Wiretap investigations. Your affiant has also attended 24 hour class of instruction by Members of Desert Snow on Hidden Compartments/Interdiction in passenger vehicles as well as a class of instruction in Commercial Vehicle Interdiction held by the 420 Group. Your Affiant is also a certified K-9 handler in Drug Detection with the Metropolitan Police Department.

2. Through research and experience, your affiant has learned that synthetic cannabinoids are substances chemically produced to mimic the psychoactive cannabinoid, delta-9 tetrahydrocannabinol (THC), the active ingredient in cannabis. These substances are then sprayed on or mixed with some type of carrier material, such as a plant material that may have an appearance similar to cannabis. The most common plant used is damiana. The final product is then

packaged in mylar packets or small jars. Once packaged, the synthetic cannabinoids are sold as "potpourri" or "incense." Theses packets and jars are sold in net weights from one gram to fifteen grams. The labels of these packets and jars often carry the disclaimer, "Not for Human Consumption". This disclaimer is used to bypass Food & Drug Administration regulation. These products are sold under numerous brand names. The first popular brands of synthetic cannabinoids recorded in Europe and in the United states are "Spice" and K-2". Though these brands are rarely available in Washington, D.C., the terms "Spice" and "K-2" are commonly used as street names for all synthetic cannabinoid products. The Metropolitan Police Department has seized eighty-nine different brands of synthetic cannabinoids, among those are "Bizarro", "Scooby Snax ", "WTF", "Aloha" and "Hookah Blast". Samples of these brands have been analyzed by the DEA's forensic laboratory and found to contain illegal synthetic cannabinoids.

3.  Through research and experience, your affiant has also learned that one of the newest trends by the manufacturers of synthetic cannabinoid products is to infuse the chemicals into the oil that is used in electronic cigarettes, better known as vape. The bottles of vape often carry the same brand names as the aforementioned packets and jars.

4.  Through research and experience, your affiant has learned that these products are often sold in convenience stores, gas stations, head shops and food-carry-outs, hereinafter known as stores. The users of synthetic cannabinoids ingest the synthetic cannabinoids by smoking the laced plant material as a hand rolled cigarette or pipe, identical to cannabis use and in electronic cigarettes.

5.  Your affiant has further learned, through experience, that manufacturers and wholesalers of synthetic cannabinoid products often use freezer size ziplock bags to package the packets for transportation and accountability purposes. Your affiant has observed this packaging method when large shipments of synthetic cannabinoid products have been intercepted in parcels

from courier services. This packaging method has been found at numerous stores where large seizures of synthetic cannabinoid products have been made by law enforcement in Washington, D.C.

6. Based on your affiant's experience, training and participation in narcotics investigations, your affiant has learned that illegal drug traffickers often use mailing and shipping services to move illegal drugs. Among these services are the U.S. Postal Service, Federal Express and United Parcel Service as well as Independent Couriers. Illegal drug traffickers use these services due to their low cost, reliability, speed, a perceived minimal chance of detection by law enforcement and the lack of risk of personal apprehension by law enforcement while the illegal drugs are in transit.

7. Further, based upon your affiant's experience, training and participation in narcotic investigations, your affiant has personal knowledge that illegal drug traffickers often have shipments of illegal drugs sent to addresses other than their own and to persons other than themselves. Often, these persons are compensated for receiving the parcels. Once the parcel is received, arrangements are made for the trafficker or his/her representative to pick up the parcel. The senders of these parcels usually use false names, false return addresses or the address of a mail service establishment, and the declared contents in shipping manifests are often false or misleading.

8. Further, based upon your affiant's experience, training and participation in narcotic investigation, your affiant has personal knowledge that illegal drug traffickers and persons involved in illegal drug activities maintain proceeds, books, records, receipts, notes, ledgers, documentation, computer and computer records, electronic records, personal records and other papers relating to the ordering, sales and distribution of cannabis and/or other illegal drugs. Your affiant knows that the aforementioned items are generally maintained where the persons involved

in such criminal activity can obtain ready access to them. Your affiant knows that traffickers often maintain these aforementioned items along with illegal drugs in commercially-available storage units in an effort to evade detection by law enforcement. A given storage unit may be rented over time in the name of one or more persons, and traffickers may continue to use the same storage unit even as the named "renter" changes over time. Furthermore, firearms are often stored in the storage units along with illegal drugs in order to assist in protecting them from other criminals. Your affiant further knows that when large volumes of illegal drugs are at stake, given their street value, drug traffickers are sometimes more likely to maintain firearms nearby, including in the storage units themselves.

9. Your affiant further knows that, in the Washington D.C. area, synthetic cannabinoid products are shipped to the area from elsewhere before being further distributed to stores. Often these shipments are delivered to commercial storage units, where traffickers of the illegal synthetic cannabinoid products maintain their product on an ongoing basis. Such traffickers frequently maintain a consistent supply of illegal cannabinoid products within the storage unit, along with the other proceeds, books, records, and other items mentioned in the preceding paragraph.

**INVESTIGATION**

10. The facts and information contained in this affidavit are based on your affiant's personal knowledge, and information obtained from federal and/or state law enforcement officers. All observations referenced in this affidavit that were not personally made by me were related to me by the persons who made such observations through reports or conversations. This affidavit only contains such information as is necessary to show probable cause that the premises known as Extra Space Storage Unit #2027, located at 6011 Blair Road, N.W., Washington, D.C. 20111 (hereinafter "the premises"), as further described in Attachment A, contains the items described in

Attachment B, attached and incorporated as part of this affidavit, all of which constitutes evidence, fruits, and instrumentalities of, inter alia, violations of United States federal law.

11. On the basis of this familiarity, and on the basis of the other information that the affiant has reviewed and determined to be reliable, it is alleged that there is probable cause to believe that persons known and unknown, have committed, are committing, and will continue to commit federal felony offenses, including the possession of controlled substances with intent to distribute, and attempts and conspiracies to do the same, in violation of Title 21, United States Code, Sections 841(a)(1) and 846. It is further alleged that the facts contained herein establish probable cause for the issuance of a search and seizure warrant for the premises.

12. This investigation arises from the interdiction of a pallet of suspected synthetic cannabinoids in Maryland that was being shipped to a storage facility complex in the District of Columbia. As further described below, a warrant was obtained for the original storage unit (#5071 of Building 6035) which was the designated address for the seized shipment. On September 1, 2015, a controlled delivery was made to two individuals, who then loaded that shipment into a different storage unit of the complex (#2027, Building 6011), the premises. As further described below, your affiant is now seeking a search warrant for the second storage unit, the premises.

13. In support of this application and the basis for probable cause, your Affiant deposes and states that on August 27, 2015, at approximately 0847 hours, members of the Maryland State Police /Metropolitan Area Drug Task Force were conducting proactive drug trafficking interdiction efforts at National Delivery Systems, Incorporated; a freight shipping logistics company at 8700 Robert Fulton Drive, Columbia, Howard County, Maryland 21046.

During these efforts, Metropolitan Area Drug Task Force officers observed a large wooden pallet containing numerous cardboard boxes with brown packaging tape and one white cardboard

box with clear packaging tape wrapped in clear plastic wrap on the shipping floor that displayed numerous anomalies.

The shipment displayed the following information:

Roadrunner Transportation Services shipment number:   367576881

Observed in writing in blue marker on the clear plastic wrap, as follows:

"EXTRA SPACE STORAGE, 6011 BLAIR ROAD. N.W., WASHINGTON, DC   20011."

Through further investigation, your affiant discovered that the shipment information was as follows:

Shipper:
Huka World
1565 West 132nd Street
Gardena, California   90249
623-759-8005

Consignee:
Extra Storage
6011 Blair Road Northwest
Unit 5071
Washington, DC 20011

Furthermore, the shipment was observed to contain special instructions:   "CFA MIKE 202 378 6192 / FRAGILE GLASS HANDLE WITH CARE / LIFTGATE DELY REQUIRED QUES EDDIE 213 706 8182."

It was also noted that the shipment was described as having a weight of 600 pounds, and the description of articles on the manifest was declared as "PLT GLASS PIPES 155740-2."

Members of the Metropolitan Drug Task Force noted the aforementioned information to be derivations from routine freight shipments as it is uncommon for shipments to be shipped to a storage facility instead of a specific consignee or business.

Based on the totality of the circumstances, and knowing that it was possible for the aforementioned cardboard boxes palletized in this shipment to contain controlled dangerous

6

substances, Sergeant Murphy #2936 of the Maryland State Police / Metropolitan Area Drug Task Force along with his canine partner "Mia" conducted a canine drug scan on the aforementioned shipment identified above bearing the Roadrunner Transportation Services shipment number 367576881. This number is a unique shipment number, also known as a "Pro Number," assigned only to this freight shipment.

Sergeant Murphy and his canine partner "Mia" conducted a drug scan on this target freight shipment along with other non-target freight shipments. Sergeant Murphy's canine partner "Mia" gave a passive alert on this targeted freight shipment bearing shipment number 367576881 for the odor of controlled dangerous substances.

Drug detector canine "Mia" is trained to detect the odor of controlled dangerous substances. These controlled dangerous substances include marijuana, cocaine, crack cocaine, heroin, methamphetamine, and ecstasy. Upon detection of any of these six (6) controlled dangerous substance odors, canine "Mia's" behavior will change. Canine "Mia" is trained to come to a final response by passively sitting at the source of the odor. This is called a "passive" final response. This response may also indicate items recently contaminated with, or associated with, the odor of one or more of the aforementioned controlled dangerous substances.

Sergeant Murphy and his canine partner "Mia" have completed a 440 hour drug detection canine course with the Maryland State Police Department and "Mia" is certified in the detection of the odors of marijuana, cocaine, crack cocaine, heroin, methamphetamine, and ecstasy through the United States Police Canine Association. Additionally, the Maryland State Police Department requires all canine handlers and canines to go through annual training.

After the canine drug scan, investigators with the Metropolitan Area Drug Task Force began maintaining custody of this freight shipment at National Delivery Systems, Incorporated in Columbia, Howard County, Maryland. The freight shipment was contractually shipped through

Roadrunner Transportation Services, but logistically shipped by National Delivery Systems, Incorporated of Columbia, Howard County, Maryland.

Maryland State Trooper Deibel applied for and was granted a search warrant for the listed shipping pallet containing the cardboard boxes, by a Judge of Circuit/District Court for Howard County, Maryland. The Search Warrant was executed and it revealed thirteen (13) large brown cardboard boxes and one (1) large white cardboard box each containing large plastic bags with numerous black mylar packets labeled "Bizarro" in assorted size packets. The freight shipment remains in custody of Metropolitan Area Drug Task Force. The gross weight of the fourteen (14) boxes combined with packaging is approximately five hundred sixteen and 76/100 (516.76) pounds. Your affiant would note that the labeling and packaging and sizes of these "Bizarro" packets were consistent with illegal synthetic products that have been seized by the Metropolitan Police Department on previous occasions. Furthermore, your affiant would note that the contents of the shipping pallet were flatly inconsistent with the declared contents of "glass pipes" on the manifest. Your affiant believes that a conservative estimate of the "street value" of the packets would amount to several hundred thousand dollars.

14. Further Investigation revealed that the Extra Space Storage facility carries a main mailing address of 6011 Blair Road NW, Washington DC 20011. However the storage unit complex consists of detached buildings one of which carries the address of 6035 Blair Road NW, Washington, DC 20011. The storage unit bearing number #5071 is located within the building numbered 6035. The storage unit bearing number # 2027, the premises, is located within a building that carries the address of 6011 Blair Road NW, Washington, D.C. 20011.

15. On August 28, 2015 Metropolitan Police Department Task Force Officer Phillip Robinson responded to the location of the seized freight pallet in Maryland to retrieve a sample packet of "Bizarro" contained within the boxes. At this time one 10 gram packet of "Bizarro" was

randomly removed from a box contained on the shipment pallet (hereinafter "shipment sample"). TFO Robinson then took possession of the shipment sample and transported it directly to the Bureau of Customs and Border Protection drug lab located in Springfield, Virginia for preliminary screening. The shipment sample contains a green plant material.   On August 28, 2015, TFO Robinson was contacted by Assistant Lab Director Eugene Bondoc of the Bureau of Customs and Protection Border, and advised that the preliminary screening of the shipment sample of 10 gram "Bizarro" was complete and had a mass confidence rating of 92% for XLR-11 with 100% being the highest level of confidence.   Given that the mass confidence rating is 90% or greater, your affiant understands that the conclusion of the screening is that the shipment sample contains a detectable amount of   XLR-11, a known Schedule 1 synthetic cannabinoid, which at the time of this seizure is a scheduled and controlled substance under both federal and District of Columbia law and is therefore illegal under both federal and District of Columbia law.

    16.   During the course of this investigation it was learned that, on two previous occasions, shipments were delivered to Extra Space Storage of 6011 Blair Road NW, Unit #5071, Washington, D.C.   20011, that were also described as glass pipes. The first shipment was received on April 3, 2015; was described as containing 400 pounds of "PLT glass pipes" that were shipped from "Huka World, 17510 S Figuerora St, Gardena, CA   90248;" and was listed with a contact person for delivery that was named "Mike."   The second shipment was received on May 28, 2015; was described as containing 500 pounds of "SKD glass pipes" that were shipped from "Huka World, 2045 W Rosecrans Ave, Gardena, CA   90249;" and was listed with a contact person for delivery that was named "Mike."   (The seized shipment was described as containing 600 pounds of "PLT glass pipes" that were shipped from "Huka World, 1565 W 132nd Street, Gardena, CA 90249;" and was listed with a contact person for deliver that was named "Mike.")   Shipping receipts for the two previous shipments contained instructions that are consistent with the current

shipment; were shipped with the same shipping company as the current shipment; and were addressed to the same consignee as the current shipment.   Your affiant understands that the current renter of Extra Space Storage Unit #5071, located at 6035 Blair Road, N.W., Washington, D.C.   20111, is different from the renter or renters of Unit #5071 at the time of the two previous shipments.   Your affiant knows that drug traffickers can continue to use the same storage facility in order to facilitate their drug trafficking even while the names of the renters change.  Furthermore, through investigation your affiant understands that the two individuals who received the seized shipment on September 1, 2015, have previously received shipments for Storage Unit #5071 and then been seen taking such shipments into Building 6011.   Your affiant also understands that current renter of the premises, Unit #2027, is one of the two individuals who received the seized shipment; that individual is not the same as the renter(s) of Unit #5071.  Especially given the size and value of the current and seized shipment of suspected, illegal synthetic cannabinoids, along with the reported weights of the previous suspect shipments, as well as the nature of the premises as a storage unit, your affiant believes that there is probable cause to believe that Unit # 2027, the premises, is being used in an ongoing effort to store illegal and controlled substances and to further their trafficking.

17.   During the morning of August 31, 2015, law enforcement attempted to make a controlled delivery of the seized shipment to Unit # 5071.   Ultimately this effort was unsuccessful.

18.   On August 31, 2015, United States Magistrate Judge Kay of the United States District Court for the District of Columbia authorized the search of Unit #5071, granting a search warrant application.

19.   On September 1, 2015, law enforcement made a controlled delivery of the seized shipment to the loading dock of 6035 Blair Road N.W., which is the building that contains Unit

10

5071. Two individuals arrived in a taxi. One of them signed paperwork of an undercover officer that acknowledged receipt of the seized shipment. At that point, the same individual went into the office area, and returned outside while pulling two hand carts. After the shrink wrap of the seized shipment was removed, the two individuals loaded the boxes from the seized shipment onto the two handcarts and pulled them across the parking lot to the building at 6011 Blair Road N.W. The two individuals entered that building with the two handcarts and law enforcement lost sight of them for a brief time. Within minutes, law enforcement observed the two individuals within the building places boxes from the two handcarts into storage unit #2027, the premises. One of the individuals then closed the door and placed a lock on the door of and locked it. Subsequently, law enforcement detained the two individuals while they were in possession of two empty carts; one of the individuals had the key to the lock that had just been locked on the door of the premises. Law enforcement determined that the key unlocked the lock, then re-locked the door and made the premises secure pending application for a search warrant.

20. Based on the above facts and circumstances your affiant submits there is probable cause to believe that one or more persons are involved in the importation and distribution of scheduled, illegal synthetic cannabinoids in the Washington D.C. metropolitan area, and are utilizing the location known as Extra Space Storage Unit #2027 located at 6011 Blair Road NW, Washington DC, for the purposes of receiving shipments of synthetic cannabinoid products, and for the purposes of storing and distributing and facilitating the trafficking of such products in violation of Title 21, United States Code, Sections 841(a)(1) and 846. Furthermore, your affiant submits there is probable cause to believe that evidence and instrumentalities of the crimes described herein and as set forth more fully in Attachment B to the warrant application, incorporated herein by reference, are contained or secreted within the confines of the target

11

location that is described more fully in Attachment A to the warrant application, incorporated herein by reference.

WHEREFORE, in consideration of the facts presented, your affiant respectfully requests that the Court issue a search warrant for Extra Space Storage Unit #2027 located at 6011 Blair Road NW, Washington D.C., and authorize the search and seizure of the items described in Attachment B hereto.

_____
Affiant
Detective Vincent Witkowski

Subscribed and Sworn Before me this _____ day of August, 2015.

_____
G. MICHAEL HARVEY
United States Magistrate Judge
for the District of Columbia

12